# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES E. HOLLEY, | NO. 1:17-CV-00155 |
| Petitioner, | |
| v. | (JUDGE CAPUTO) |
| SUPERINTENDENT CYNTHIA LINK, *et al.*, | |
| Respondents. | |

## **MEMORANDUM**

Presently before me is Petitioner Charles Holley's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Holley, proceeding *pro se*, argues that both his trial counsel and his counsel during state habeas proceedings ("PCRA" counsel) were ineffective for various reasons. However, PCRA counsel's ineffectiveness is not a ground for federal habeas relief, and the Pennsylvania courts reasonably applied federal law in dismissing Holley's claims of his trial counsel's ineffectiveness. Holley's Petition will accordingly be dismissed, and a certificate of appealability will not issue.

## **I. Background**

Holley was charged with attempted homicide, among other crimes, stemming from an altercation during which he brandished a handgun. *See Commonwealth v. Holley*, No. 1254 MDA 2015, 2016 WL 5853351, at *1-4 (Pa. Super. Ct. Aug. 31, 2016); (Doc. 8-1 at 1-19 (Chris Mutzabaugh's trial testimony)). Testimony was given at trial that Holley entered his girlfriend's house. *Id.* at *3. He and his girlfriend "had some words," at which point Holley approached Chris Mutzabaugh (his cousin, who was also present) with a handgun and aimed it at him. *Id.*; (Doc. 8-1 at 6). Mutzabaugh testified that "it looked like . . . [Holley] was trying to pull the trigger." (Doc. 8-1 at 7). When Holley was subsequently arrested by a Pennsylvania Trooper, he told the Trooper he pointed the handgun at Mutzabaugh, but claimed to have acted "under advisement of his brother." *Holley*, 2016 WL 5853351, at *3.

Mutzabaugh, who had a criminal record and pending criminal charges, also testified

that "he was not sure whether [Holley] attempted to pull the trigger" of the handgun. *Id.* at *2; (Doc. 8-1 at 7). And Dominick Sims, who was also present during the altercation, gave police a different account: he said that Holley pulled out the handgun and told Mutzabaugh "Oh just so you know, I can kill you or anybody at anytime." *Id.* at *3. According to Sims, Mutzabaugh responded "that isn't funny man, give me the gun," then Holley handed the gun to Mutzabaugh. *Id.* Holley's trial counsel did not interview Sims or call him to testify, however. *Id*. Nor did counsel attempt to impeach Mutzabaugh using his criminal record or pending criminal charges. *Id.* at *2. Counsel's strategy was to have the jury *believe* Mutzabaugh—namely, his testimony that he was unsure if Holley tried to pull the trigger—and bringing up impeachment material or Sims's contradictory account would have, in counsel's estimation, led the jury to discredit Mutzabaugh's testimony. *See id.* at *2-3.

Finally, during his closing argument at trial, the assistant district attorney stated: "And when they arrested [Holley], he told them he did it. He said I took a gun there, I pointed it at Chris, I was drinking that night, and Luke [Holley's brother] told me to do it, kill myself while I was at it." *Id.* at *4. Holley's trial counsel did not object to this argument. *Id.*

The Pennsylvania Superior Court summarized what happened next:

> On February 2, 2010, a jury convicted Appellant [Holley] of three counts of recklessly endangering another person ("REAP"), three counts of simple assault, two counts of aggravated assault, and one count each of criminal attempt, criminal conspiracy, terroristic threats, possession of firearm with altered manufacturer's number, persons not to use or possess firearms, and receiving stolen property. On March 4, 2010, the court sentenced Appellant to an aggregate term of 13 to 32 years' incarceration. Appellant filed a post-sentence motion, which was denied by operation of law on September 8, 2010. Appellant filed a timely notice of appeal and this Court affirmed his judgment of sentence on August 2, 2011. Appellant filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on February 9, 2012.
>
> Appellant filed a *pro se* PCRA petition, which was dated August 7, 2012 and filed August 9, 2012. On February 15, 2013, appointed counsel filed an amended petition. The PCRA court conducted an evidentiary hearing on October 17, 2013.
>
> * * *
> On May 13, 2015, the PCRA court denied the PCRA petition and granted counsel's motion to withdraw. On June 8, 2015

2

> Appellant filed a timely notice of appeal. . . .
>
> Appellant raise[d] the following issues on appeal:
>
> I. Whether trial counsel erred for failing to use the evidence contained in the prosecution's case file to impeach the testimony of Commonwealth witness Chris Mutzabaugh?
>
> II. Whether trial counsel erred for not admitting into evidence Dominick Sims' statement at trial and for failing to interview this witness?
>
> III. Whether trial counsel erred by not objecting to the prosecutor's fabrication and/or misstatement of evidence to the jury during his closing summation?
>
> IV. Whether PCRA counsel was ineffective for his failure to adequately represent Appellant during his PCRA proceedings by failing to raise all claims Appellant[ ] wished to have raised without providing Appellant with a proper analysis prior to withdrawing?

*Id.* at *1 (footnote omitted). The Superior Court addressed the issues Holley raised on their merits, and concluded that Holley's trial counsel was not ineffective in any way. *See id.* at *2-5. The court held that counsel had a reasonable strategy both for not impeaching Mutzabaugh and for not calling Sims to testify, and that as a result Holley suffered no prejudice. *Id.* at *2-3. Moreover, counsel was not ineffective for failing to object to the assistant district attorney's closing argument, the court concluded, because the argument did not constitute prosecutorial misconduct. *Id.* at *4. It was based nearly verbatim on trial testimony. *Id.*

Holley timely filed the instant Petition on January 27, 2017. (Doc. 1). Holley raises the same four grounds he raised before the Superior Court: that his trial counsel and PCRA counsel were ineffective. (*See generally id.*). Respondents filed their response to the Petition (Doc. 8), after which Holley filed his traverse (Doc. 11). The Petition is thus ripe for disposition.

## II. Legal Standards

### A. Federal Habeas Review of Exhausted Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241-2254, mandates that petitioners demonstrate that they have "exhausted the remedies

3

available in the courts of the State" before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits. *See Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *Johnson v. Williams*, 568 U.S. 289, 302 (2013). "Fair presentation" of a claim merely requires the petitioner to "present [the] federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *Greene v. Palakovich*, 606 F.3d 85, 93 (3d Cir. 2010) (citation omitted). For Section 2254(d) purposes, a claim has been adjudicated on the merits "when a state court has made a decision that finally resolves the claim on the basis of its substance, rather than on a procedural, or other, ground." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 545 (3d Cir. 2014) (quoting *Thomas v. Horn*, 570 F.3d 105, 117 (3d Cir. 2009)).

When a claim is properly exhausted in the state courts and then raised on federal habeas review, the level of deference afforded to the state-court decision is substantial. *Bey v. Sup't Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017). The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'" *Collins*, 742 F.3d at 543 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013)). Accordingly, under Section 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

This is an intentionally difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" clearly established Supreme Court precedent. *Id*. Therefore, to obtain federal habeas relief on an exhausted claim, "a state prisoner must show that the state court's ruling on the claim

being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Id*. at 103.

Finally, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petition[er] must overcome the limitation of § 2254(d)[] on the record that was before that state court"; "evidence introduced in federal court has no bearing on § 2254(d)[] review." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (footnote omitted). "[D]istrict courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d). Otherwise, federal habeas petitioners would be able to circumvent the finality of state court judgments by establishing a new factual record." *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011). "This would contravene AEDPA, which requires petitioners to diligently present the facts in state court before proceeding to the federal courthouse." *Id*.

**B.     Ineffective Assistance of Counsel Claims**

Among other protections, the Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution "to have the assistance of counsel for his defense." U.S. Const. amend. VI. The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish he was denied the effective assistance of counsel under *Strickland*, the petitioner must show that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Id.* at 687-88, 691. "Both *Strickland* prongs must be satisfied." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001) (citing *United States v. Nino*, 878 F.2d 101, 104 (3d Cir. 1989)).

The first *Strickland* prong requires a petitioner to "establish . . . that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct "'requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed defendant by the Sixth Amendment.'" *Id*.

5

(quoting *Strickland*, 466 U.S. at 687). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Id*. (quoting *Strickland*, 466 U.S. at 689). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. The benchmark for judging any claim of ineffectiveness of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*.

The second prong of *Strickland* requires a petitioner to show that counsel's performance unfairly prejudiced him, meaning that counsel's errors were so serious as to deprive him of a trial with a reliable result. *Id*. at 687. It is not enough to show that the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet such a test. *Id*. at 693. Rather, the petitioner must show there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is sufficient to undermine confidence in the outcome of the trial. *Id*. The Third Circuit has stated that the "*Strickland* prejudice standard is not 'stringent'—it is, in fact, 'less demanding than the preponderance standard.'" *Williams v. Beard*, 637 F.3d 195, 227 (3d Cir. 2011) (quoting *Jermyn*, 266 F.3d at 282).

When an ineffective assistance of counsel claim is brought under Section 2254, "AEDPA review is doubly deferential, because counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. In such circumstances, federal courts are to afford both the state court and the defense attorney the benefit of the doubt." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotations and quotation marks omitted).

### III. Discussion

**A.     Grounds One, Two, and Three**

In Grounds One through Three of his Petition, Holley claims his trial counsel was ineffective for not impeaching Mutzabaugh, not interviewing or calling Sims to testify, and failing to object to the assistant district attorney's closing arguments. (Doc. 1 at 7-11). The Superior Court rejected these claims:

> [With regard to trial counsel's failure to impeach Mutzabaugh, t]he PCRA court concluded that Appellant failed to establish prejudice, because it was unlikely the attempted impeachment would have resulted in a different outcome. This determination was supported by the record and free from error. [Further, counsel had a reasonable basis for not impeaching Mutzabaugh, as his argument at trial and on appeal was that there was no evidence Appellant attempted to pull the trigger, and Mutzabaugh's testimony supported this argument.]
>
> Appellant next contends trial counsel was ineffective for failing to admit as evidence at trial a statement from Dominick Sims during a police interview and for failing to interview Sims. Appellant claims the statement contradicted the testimony provided by Mutzabaugh. . . . The PCRA court found that counsel had a reasonable strategy for not calling Sims because, as discussed above, he did not want to impeach the testimony of Mutzabaugh. . . . The PCRA court's conclusion that this ineffective assistance of counsel claim lacks merit is supported by the record and free of legal error. [Appellant also claims trial counsel was ineffective for failing to investigate Sims. However, the interview statement, in which Sims states Appellant pointed a gun at Mutzabaugh and stated he "could kill anybody at anytime" suggest Sims' testimony would not have been helpful . . . .]
>
> Appellant next claims his trial counsel was ineffective for failing to object to the assistant district attorney's alleged fabrication and/or misstatement of evidence to the jury during his closing summation. . . . The PCRA court found the issue lacked merit because the statement during closing argument did not misstate or fabricate the evidence. . . . The PCRA court further noted that the . . . statement was based on a trooper's testimony . . . . The PCRA court's determination that the prosecutorial claim lacked merit was supported by the record and free of legal error. Accordingly, because the prosecutorial misconduct claim lacked merit, Appellant's ineffective assistance of counsel claim also lacks merit.

*Commonwealth v. Holley*, No. 1254 MDA 2015, 2016 WL 5853351, at *2-4 (Pa. Super. Ct. Aug. 31, 2016) (citations and footnotes omitted).

Where, as here, the state court already has rejected an ineffective assistance of

7

counsel claim, a federal court must defer to the state court's decision pursuant to 28 U.S.C. § 2254(d). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011) (quotation omitted). Reiterating that review of this claim is "doubly deferential," Holley fails to show that the Superior Court's decision was an unreasonable application of *Strickland* or that it was an unreasonable application of the facts in light of the evidence presented. The Superior Court concluded that Holley's claims relating to his counsel's trial strategy and failure to object to the prosecutor's closing argument were without merit. The adjudication of these claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

More particularly, counsel was not deficient in not impeaching Mutzabaugh, investigating Sims, or calling him to testify because counsel's strategy of wanting the jury to believe Mutzabaugh was reasonable. As the Superior Court concluded, it was a reasonable strategy for counsel to not attack Mutzabaugh's credibility: if the jury believed Mutzabaugh was not sure if Holley attempted to pull the trigger, the jury could have concluded the Commonwealth failed to show beyond a reasonable doubt Holley attempted homicide. It was reasonable for counsel to think that impeaching Mutzabaugh would have made that conclusion less likely. *Cf., e.g.*, *Hess v. Mazurkiewicz*, 135 F.3d 905, 908-09 (3d Cir. 1998) (counsel not ineffective for failing to call a trooper to impeach victims' testimony, as counsel feared the trooper's testimony "would alert the jury to additional charges" against the defendant; nor was counsel ineffective for refusing to call witnesses counsel reasonably believed were "unhelpful"); *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986) (counsel not ineffective for failing to impeach the prosecution's sole identification witness where, although impeachment might have undermined the witness's credibility and led to a defense

8

verdict, it was "at least equally possible" that the jury would have viewed the impeachment as a "desperate effort to discredit" a largely credible witness). That is especially the case considering the impeachment material Holley thinks his counsel should have introduced was Sims's testimony—which would have undoubtedly included the statement he gave to police that Holley threatened Mutzabaugh: "I can kill you or anybody at anytime." *See, e.g.*, *Hess*, 135 F.3d at 908-09; *Jenkins v. Bergeron*, 67 F. Supp. 3d 472, 479 (D. Mass. 2014) (counsel not ineffective for refusing to impeach a witness with statements that would have cast the defendant "in a negative light and would have 'undercut' any benefit impeaching the witness might have produced"). Moreover, it was reasonable for counsel not to object to the prosecutor's closing argument because, as the Superior Court concluded, there was no basis for an objection. The prosecutor merely recounted testimony given at trial, which does not satisfy the prejudice standard under *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super. Ct. 2006). And to the extent that standard is a creature of state rather than federal law, the Superior Court's determination that the standard was not met is binding on habeas review. *Sistrunk v. Rozum*, 674 F.3d 181, 186 (3d Cir. 2012). Because the Superior Court's application of *Strickland* to Grounds One through Three was reasonable, Holley's Petition will be dismissed as to these grounds.

**B.    Ground Four**

In Ground Four of his Petition, Holley raises the issue of his PCRA counsel "not raising all claims [Holley] wanted raised without explanation prior to his withdraw[al.]" (Doc. 1 at 11). But "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); *see Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987) (reaffirming that prisoners do not have a constitutional right to counsel in collateral post-conviction proceedings). Accordingly, Holley's Petition will also be dismissed as to this ground.

### IV. Conclusion

For the above stated reasons, Holley's Petition will be dismissed. A district court

issuing a final order denying a Section 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2; 28 U.S.C. § 2253(c)(2). A court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The instant Petition does not warrant habeas relief, and reasonable jurists would not find this conclusion to be debatable. Accordingly, a certificate of appealability will not be issued because Holley has not made a substantial showing of the denial of his constitutional rights. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

    An appropriate order follows.

February 14, 2019                                              /s/ A. Richard Caputo
Date                                                                   A. Richard Caputo
                                                                                  United States District Judge